IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANTONIO G. STEWART, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. GLR-23-1725 |
| STATE OF MARYLAND, et al., | * | |
| Respondent. | * | |

***

# MEMORANDUM OPINION

THIS MATTER is before the Court for consideration of self-represented Petitioner Antonio G. Stewart's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. (ECF No. 1). Respondents State of Maryland, Baltimore City Circuit Ct., E.C.I., and Warden William Bailey (collectively, "Respondents") filed a Limited Answer to the Petition asserting that the matter is time-barred. (ECF No. 9). The Court advised Stewart of his right to respond to the Limited Answer and offer an explanation to excuse the untimely filing of his Petition. (ECF No. 10), and Stewart responded, (ECF Nos. 11, 13).[1] The Petition is thus ripe for disposition, and no hearing is necessary. See R. Govern. § 2254 Cases U.S. Dist. Ct. 8(a); 28 U.S.C. § 2254(e)(2); Local Rule 105.6 (D. Md. 2023); see also Fisher v. Lee, 215 F.3d 438, 455 (4th Cir. 2000) (noting that a petitioner is not entitled to a hearing under

---

[1] Stewart also filed a Motion to Supplement wherein he seeks to add additional grounds for relief regarding the alleged ineffective assistance of trial counsel. (Mot. Suppl. at 1–3, ECF No. 12). Because the Petition is time barred, the Motion to Supplement is futile and will be denied. Moreover, Stewart does not provide any argument or factual support for any of his claims and therefore his effort to supplement the Petition is unavailing for this reason as well. (Id.); see also R. Govern. § 2254 Cases U.S. Dist. Ct. 2(c)(2) (requiring the petition to include the facts supporting each ground).

28 U.S.C. § 2254(e)(2)). For the reasons set forth below, the Court will deny the Petition and decline to issue a certificate of appealability.

## I.     BACKGROUND

### A.     Factual Background

Stewart was tried and convicted by a jury sitting in the Circuit Court for Baltimore City of the November 30, 2008 second-degree murder of his wife and use of a handgun in the commission of a crime of violence. (State R. at 4–5, ECF No. 9-1). In an unreported opinion affirming Stewart's convictions, the Maryland Appellate Court (formerly the Maryland Court of Special Appeals) described the facts adduced at trial as follows:

> [Stewart] was convicted of murdering his wife, Dawn Stewart ("Dawn"). [Stewart] and Dawn had two young children and resided at Parkside Drive in Baltimore City. Dawn also had a 23-year-old daughter, Latia Land ("Land"), from a previous relationship. At the time of her murder, Dawn had moved out of the family home and was staying with a friend, Wendy Palmer ("Palmer").
>
> On November 30, 2008, Dawn called Land and told Land that she was going to pick up the children from [Stewart] at the Parkside house. Later that day, Dawn called Land again but Land did not answer her phone. Land returned the call and [Stewart] answered. Land could hear Dawn in the background, saying, "[H]ang up and call the police he just punched me in the face." [Stewart] hung up the phone. Thereafter, Land called back, but there was no answer. Land called 911 and directed the police to the home. Land also called Palmer and went to the Parkside house.
>
> At the time Palmer received Land's call, she and her husband were visiting relatives a few blocks from the Parkside house. After speaking with Land, Palmer went to the Parkside house. She was the first person to arrive at the house. She went to the door and knocked. [Stewart] answered the door, passed Dawn and [Stewart]'s youngest child out to Palmer, and shut the

2

door. Palmer testified that when the door was open "[Dawn] was standing there crying and she was calling out my name. She was like [Palmer] help me he gon [sic] kill me. [Palmer] help me he gon [sic] kill me."

Thereafter, three police officers arrived at the scene. One of the officers kicked in the front of the house. At almost the same time, several gun shots were heard coming from the house. The officers then retreated to safe positions while they waited for backup. About five to ten minutes later, the officers heard two additional gun shots.

When the SWAT team arrived, they attempted to communicate with [Stewart] in the home but there was no response. They noticed an open door and feared that [Stewart] had left the home. They entered the home and found [Stewart] outside on a porch upstairs. He had a belt tightly around his neck in an apparent attempt to commit suicide. When officers found [Stewart], he still had his hand on a handgun.

After securing [Stewart], officers searched the house. They found Dawn lying face-down and unresponsive in the basement. Medical personnel rolled her over and discovered that she was shot multiple times "center mass."[] The paramedics attempted to revive Dawn. She, however, was pronounced dead when it was discovered that rigor mortis had set in.

[Stewart] was then treated at the hospital and released into police custody. Thereafter, [Stewart] was brought to the homicide unit. While at the homicide unit, [Stewart] was read his *Miranda* rights. He agreed to speak with a homicide detective. In [Stewart]'s statement, he insisted that Dawn and he had gotten into a fight. He also stated that:

> I told her . . . I can't get ahead. Things is [sic] just not what it's [sic] supposed to be. I can't get ahead. And I put the gun up to the back of my head behind my ear and I went to pull the trigger and it wouldn't go off. . . . [W]hen I heard a kick at the door I jumped and when I jumped the shell must've [sic] casings went through and the gun went off and it hit my wife.

3

> [Stewart] continued that he again tried to fix the gun but it went off a second time. Thereafter, he left the basement and went to the location where he was found apparently attempting to commit suicide.

(Id. at 112–14).

On July 26, 2010, Stewart was sentenced to thirty years' imprisonment for the murder conviction and to a term of twenty years' imprisonment, the first five to be served without parole, for the handgun conviction; the sentences were to be served consecutively. (Id. at 4–5; Sentencing Hr'g Tr. ["Sentencing"] at 47, ECF No. 9-8).

**B.     Procedural Background**

On June 4, 2010, Stewart filed a motion for a new trial. (State R. at 9; Sentencing at 3–4). Stewart asserted two grounds for relief: (1) issues with the testimony of the medical examiner and the admission of her report; and (2) that his Miranda rights were violated. (Sentencing at 4–21). Stewart also asserted during his sentencing hearing and in support of his request for a new trial that he received ineffective assistance of counsel because he was advised not to testify, and no witnesses were called on his behalf. (Id. at 21–23). The trial court heard argument on the motion and denied it at the sentencing hearing. (State R. at 10; Sentencing at 28–31).

Stewart's timely application for review of his sentence was denied on November 23, 2010, and docketed on December 7, 2010. (State R. at 11, 37–39).

Stewart filed his direct appeal on July 29, 2010. (Id. at 10). In an unreported opinion dated July 26, 2012, the Appellate Court of Maryland affirmed Stewart's judgment of conviction. (Id. at 111–24). The court's mandate issued on August 27, 2012. (Id. at 143).

4

Stewart filed a timely petition for writ of certiorari with the Supreme Court of Maryland (formerly the Court of Appeals of Maryland) on August 16, 2012. (Id. at 125–28). The court denied the petition on October 22, 2012. (Id. at 144).

On June 17, 2013, Stewart filed a motion for substance abuse evaluation and commitment under Md. Code Ann., Health Gen. §§ 8-505 and 8-507. (Id. at 12). The court denied the motion on July 3, 2013. (Id. at 13).

On February 24, 2020, Stewart initiated state postconviction proceedings under Maryland's Uniform Postconviction Procedure Act ("UPPA"), which he later supplemented. (Id. at 13, 15). The Circuit Court for Baltimore City ["Baltimore City Circuit Court"] held a postconviction hearing on September 17, 2021. (Id. at 20, 146). At the hearing, the State and Stewart presented an agreement resolving the petition which allowed Stewart to file a belated motion for modification of sentence and agreed to a hearing on that motion and that "any and all other post conviction claims [would be] withdrawn with prejudice." (Id. at 146). On September 21, 2021, the Baltimore City Circuit Court entered a consent order adopting the resolution. (Id.).

On December 17, 2021, Stewart filed a belated motion for modification of his sentence and a request for a hearing. (Id. at 148–76). After a hearing, held on August 17, 2022, the Baltimore City Circuit Court denied the motion by written opinion entered that day. (Id. at 186).

On June 26, 2023, this Court docketed Stewart's federal habeas petition (the "Petition"). (ECF No. 1). The Petition is signed and dated June 13, 2023. (Habeas Pet. at 6, ECF No. 1). The envelope indicates the Petition was deposited in the institutional mail

on June 22, 2023. (ECF No. 1-1). In this Petition, Stewart raises the following claims: (1) exculpatory evidence was withheld by the Assistant State's Attorney; (2) trial counsel was ineffective when he failed to object and preserve issues for appeal; (3) the transcription service failed to transcribe the complete trial; (4) the trial court erred when it deviated from the Maryland sentencing guidelines; and (5) Md. Rule 4-213(a)(4) was violated, which resulted in jurisdictional issues in his case. (Habeas Pet. at 5–6).

On June 30, 2023, the Court directed Respondents to answer the Petition. (ECF No. 4). On September 8, 2023, Respondents filed a Limited Answer to the Petition arguing that the matter is time-barred. (Resp't's Ltd. Answer to Habeas Pet. ["Ltd. Answer"] at 2, 10, ECF No. 9). On September 12, 2023, the Court issued an Order providing Stewart twenty-eight days to respond to the Limited Answer and offer additional information concerning the timeliness of his Petition. (Sept. 12, 2023 Order at 3, ECF No. 10).[2] On March 18, 2024, Stewart filed correspondence with the Court regarding his further efforts to have his sentence reviewed by the State court. (Pet'r's Correspondence re: Exhausting State Remedies ["Letter No. 1"] at 1, ECF No. 11). On June 20, 2024, the Court received Stewart's "Motion for Supplement Issues" wherein Stewart listed 37 "issues" regarding the alleged ineffectiveness of trial counsel. (Pet'r's Mot. for Suppl. Issues ["Suppl. Issues"] at 1–3, ECF No. 12). On July 15, 2024, the Court received a letter from Stewart explaining

---

[2] The Fourth Circuit has held that, before dismissing a pro se petition for writ of habeas corpus, "a district court should furnish notice that simply warns the pro se petitioner that his § 2254 action will be dismissed as untimely unless the petitioner can demonstrate that the petition was filed within the proper time period." Hill v. Braxton, 277 F.3d 701, 708 (4th Cir. 2002).

why the instant Petition was not filed within one year after exhausting his state court remedies. (Pet'r's Correspondence re: Time-bar ["Letter No. 2"] at 1, ECF No. 13). Stewart explains that: he is layman, his attorney did not advise him of his right to file a § 2254 petition, and he only recently learned about filing a habeas corpus petition. (Id.)

## II.   DISCUSSION

### A.   Standard of Review

A one-year limitation period applies to petitions for writ of habeas corpus filed under 28 U.S.C. § 2254. The limitation period is set forth in 28 U.S.C. § 2244, which provides that the one-year limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). But "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). Further, the Fourth Circuit has held that a motion for modification of

7

sentence filed under Md. Rule 4-345 tolls the one-year limitations period under 28 U.S.C. § 2244(d)(2) because "a Maryland Rule 4-345 motion to reduce sentence is not part of the direct review process and undoubtedly calls for review of the sentence." Mitchell v. Green, 922 F.3d 187, 195 (4th Cir. 2019) (quoting Wall v. Kholi, 562 U.S. 545, 555 (2011)) (internal quotation marks omitted).

"[T]he one-year limitation period is also subject to equitable tolling in 'those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation against the party.'" Hill v. Braxton, 277 F.3d 701, 704 (4th Cir. 2002) (quoting Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000)). To be entitled to equitable tolling under this theory, a petitioner must establish that either some wrongful conduct by respondents contributed to his delay in filing his petition or that circumstances beyond his control caused the delay. See Harris, 209 F.3d at 330. "[A]ny resort to equity must be reserved for those rare instances where . . . it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Id.

**B.      Analysis**

Stewart's conviction became final for purposes of calculating the one-year limitation period under § 2244(d)(1) on January 21, 2013, the day the ninety-day period for seeking certiorari review with the United States Supreme Court expired. See Jimenez v. Quarterman, 555 U.S. 113, 119 (2009). Stewart had no state postconviction petitions pending after his conviction became final until he filed his initial state postconviction

petition on February 24, 2020.[3] (Ltd. Answer at 8). That initial postconviction petition could not toll the limitations period because it was filed well after the one-year limitations period expired. (Id.). Similarly, Stewart's other postconviction proceedings, filed after his initial state postconviction petition, also did not toll the limitations period because the limitations period had expired. (Id. at 14). State proceedings filed after the federal habeas deadline has passed do not revive the limitations period. See Gray v. Waters, 26 F.Supp.2d 771, 772 (D.Md. 1998) (holding the limitations period "does not begin to run anew for a year following denial of state post-conviction remedies"); Sibley v. Culliver, 377 F.3d 1196, 1204 (11th Cir. 2004) (stating a state court filing after the federal deadline expired does not revive the federal limitations period); Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (explaining that a state postconviction proceeding commenced after the one-year limitation period has already expired does not "reset" the start of the limitation period).

Stewart's Petition does not rely on a constitutional right recognized by the Supreme Court which was made retroactively applicable, nor does Stewart allege that he was prevented from filing his Petition through state action or that the factual predicate for any of his claims was not discovered until one year prior to the filing of his Petition. 28 U.S.C. § 2244(d)(1).

---

[3] Even if the Court determined that Stewart's June 17, 2013 Motion for Substance Abuse Evaluation and Commitment under Md. Code Ann., Health Gen. §§ 8-505 and 8-507 could serve to toll the limitations period, that motion was denied on July 3, 2013 (State R. at 145), and Stewart had no other applications pending from then until the filing of his initial postconviction petition over six years later.

Further, this Court does not find that Stewart has presented any evidence that he is entitled to equitable tolling of the limitations period. "[E]ven in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling." United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004). Consequently, the Petition must be denied as time-barred.

### III.   CERTIFICATE OF APPEALABILITY

When a district court dismisses a habeas petition solely on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" Rose v. Lee, 252 F.3d 676, 684 (4th Cir. 2001) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). This Court concludes that Stewart has not made such a showing and declines to issue a certificate of appealability. Stewart may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. See Lyons v. Lee, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

## IV. CONCLUSION

For the foregoing reasons, the Court will deny Stewart's Petition for Writ of Habeas Corpus (ECF No. 1) and decline to issue a certificate of appealability. A separate Order follows.

Entered this 25th day of September, 2024.

/s/
George L. Russell, III
Chief United States District Judge
